# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| FABIAN ANTONIO POSADAS-MEJIA, | : | Case No. 1:20-cv-468 |
| | : | |
| | : | Judge Timothy S. Black |
| Petitioner, | : | |
| | : | |
| vs. | : | |
| | : | |
| REBECCA ADDUCCI, *et al.*, | : | |
| | : | |
| Respondents. | : | |

## ORDER DENYING PETITIONER'S MOTION
## FOR A TEMPORARY RESTRAINING ORDER (Doc. 7)

This case is before the Court on Petitioner's motion for a temporary restraining order under Fed. R. Civ. P. 65 (the "TRO Motion") (Doc. 7) and the parties' responsive memoranda (Docs. 10, 11).[1]  Additionally, at Petitioner's request, the Court takes judicial notice of Petitioner's federal criminal case, *United States v. Fabian Posadas-Mejia*, No. 2:19-cr-169 (S.D. Ohio).  (Doc. 1 at 5).  Accordingly, Petitioner's federal criminal case record is also before the Court.[2]

---

[1] Respondents' memorandum is styled as both a response in opposition and a motion to dismiss. (Doc. 10).  As set forth in n.7, *infra*, Respondents' arguments in support of dismissal are not, on their face, well-taken.  Moreover, because the TRO Motion is subject to an expedited briefing schedule, the Court will not await full briefing on Respondents' motion to dismiss before ruling on the TRO Motion.  Accordingly, Respondents' motion to dismiss is **DENIED without prejudice**, such that Respondents may file a new motion to dismiss at a more appropriate time.

[2] Specifically, the Court has before it the entirety of Petitioner's criminal docket, as well as a copy of Petitioner's Presentence Investigation Report ("PSR").  As in all criminal cases, the PSR is a sealed document, which is incorporated into the record at the time of sentencing.  Due to the confidential nature of the PSR, this Court will only reference information that is otherwise publicly available or specifically brought into question by Petitioner.  Further, for the sake of

## I.  BACKGROUND

Petitioner Fabian Antonio Posadas-Mejia is a 45-year-old citizen of El Salvador, who has been residing in the United States intermittently for over two decades.  (Doc. 10-2 at 2–5; CR Doc. 58 at 4).  Petitioner was first ordered removed from the United States in August 1995.  (*Id.*)  Since that time, Petitioner has returned to the United States unlawfully and been removed on a number of occasions.  (*Id.*)

As reflected in Petitioner's federal criminal record, while residing in the United States, Petitioner has been convicted of domestic violence, failure to comply with an officer, and various traffic offenses.  (Doc. 10-2 at 5–6; *see also* PSR).  Most recently, Petitioner was convicted in the Southern District of Ohio of unlawful re-entry of a removed alien, 8 U.S.C. § 1326(a), and sentenced to 10 months incarceration.  (CR Doc. 62).  Petitioner's federal criminal record also reflects that he has ties to La Mara Salvatrucha (a/k/a "MS-13"), a violent criminal organization.  (Doc. 10-2 at 4; CR Doc. 58 at 4; *see also* PSR).

On April 14, 2020, upon completing his federal sentence, Petitioner was transferred into the custody of Respondent, Immigration and Customs Enforcement ("ICE"), pursuant to a final removal order.  (Doc. 10-2 at 5).  Petitioner has filed an asylum application to challenge the removal order and, pending review of his application, he has been held in ICE custody—initially at Morrow County Correctional Facility

---

clarity, the Court will cite to documents filed on the docket of the instant habeas case as "Doc." and will cite to documents filed on the docket of Petitioner's criminal case as "CR Doc."

("Morrow") before being transferred to the Butler County, Ohio Jail ("Butler") on June 5, 2020. (Doc. 7-1 at 4–5, 9; Doc. 10-2 at 2).

During Petitioner's detention, the COVID-19 pandemic enveloped the county. COVID-19 is a highly infectious virus that can be transmitted easily from person to person. *Wilson v. Williams*, No. 20-3447, 2020 WL 3056217, at *1 (6th Cir. June 9, 2020). In some instances, the symptoms of COVID-19 can be relatively mild. *See* Centers for Disease Control and Prevention, *Symptoms of Coronavirus*, available at https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last accessed June 25, 2020). However, the effects of COVID-19 can be drastically more severe, and potentially fatal, particularly for older individuals or those with certain underlying medical conditions, including persons with heart disease, asthma, diabetes, HIV, chronic kidney disease, chronic liver disease (including cirrhosis or chronic hepatitis), or those who are immunocompromised. *See* Harvard Health Publishing, *If You Are at Higher Risk*, available at https://www.health.harvard.edu/diseases-and-conditions/if-you-are-at-higher-risk (last accessed June 24, 2020).

Petitioner has presented this Court with copies of his medical records, evidencing that he contracted COVID-19 while detained at Morrow, although he has since recovered.[3] (Doc. 1-1 at 10; Doc. 10-2 at 6–7). Petitioner has also presented evidence

---

[3] On April 30, 2020, while detained at Morrow, Petitioner tested positive for COVID-19. (Doc. 1-1 at 10) (indicating "Critical Result" and emphasizing the word "Detected"). Before being admitted to Butler, Petitioner took two additional COVID-19 tests on June 1 and 2, 2020, both of which came back negative. (Doc. 1 at 14; Doc. 10-2 at 6–7). Despite acknowledging the positive result in earlier filings, Petitioner now disputes the accuracy of the test conducted at Morrow (called the "ID NOW" test) in his reply memorandum, and argues that the tests have

that, in 2014, he was treated for ***acute*** Hepatitis B, an illness which affects the liver. (Doc. 1-1 at 17). Additionally, during the presentence investigation for his federal criminal case, Petitioner advised that he was treated for Hepatitis B in 2014, that he has not experienced any complications since that time, and that (as of 2019) he was in good physical health—all of which was confirmed through health records obtained by the U.S. Probation Office. (*See* PSR). Finally, upon his transfer to Butler, Petitioner informed jail medical staff that he took Omeprazole (typically used to treat acid reflux) but reported no other health conditions or concerns. (Doc. 10-2 at 7).

On June 12, 2020, Petitioner filed the instant habeas case and the TRO Motion, seeking immediate release from his continued detention due to the exigencies created by COVID-19. (Docs. 1, 7). The Court held an informal preliminary conference by telephone and established an expedited briefing schedule. (Min. Entry & Not. Order, Jun. 16, 2020). The TRO motion is now fully briefed and ripe for adjudication.

## II. STANDARD OF REVIEW

"The Sixth Circuit has explained that 'the purpose of a TRO under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had.'" *Reid v. Hood*, No. 1:10-CV-2842, 2011 WL 251437, at *2 (N.D. Ohio Jan. 26, 2011) (quoting

---

only been approved for emergency use by the Food and Drug Administration, that the tests do not measure whether Petitioner's body has created antibodies in response to COVID-19, and by noting that there is presently insufficient information on how Petitioner test "samples" were handled (presumably insinuating that the test was contaminated). (Doc. 11 at 4–5). Thus, Petitioner argues that more testing is required to determine whether he has actually contracted and recovered from COVID-19. (*Id.*) However, the Court does not need to reach a final determination on this issue in the context of this emergency TRO Motion.

4

*Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996)). "The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo." *Id*. (citing *New Motor Vehicle Bd. of Calif. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977)).

Plaintiff bears <u>the heavy burden</u> of demonstrating his entitlement to injunctive relief. An "injunction is an **extraordinary remedy** which should be granted only if the movant carries his or her burden of proving that the circumstances <u>clearly</u> demand it." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (emphasis added).

In determining whether to grant injunctive relief, this Court must weigh four factors: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 526–27 (6th Cir. 2017). These four considerations are factors to be balanced, not prerequisites that must be met. *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs,* 225 F.3d 620, 625 (6th Cir. 2000).

### III. ANALYSIS

On June 12, 2020, Petitioner filed both: (1) a Complaint for Declaratory and Injunctive Relief and Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Habeas Petition"); and (2) the TRO Motion now before the Court. (Docs. 1, 7). In these filings, Petitioner alleges that, due to the COVID-19 pandemic, his continued detention amounts to unconstitutional punishment under the Fifth Amendment of the United States Constitution. (Doc. 1 at 19–20; Doc. 7 at 8–10).

Specifically, Petitioner argues that he "is in grave danger because he suffers from hepatitis and is being exposed to the 'COVID-19' virus without any adequate precautions against the contraction of the virus nor any appropriate medical treatment while he remains in custody."[4] (Doc. 1 at 1). Accordingly, Petitioner seeks an Order from this Court mandating his immediate release from ICE custody.[5] (Doc. 1 at 21).

---

[4] Whether a person who has recovered from COVID-19 can contract the virus again is, at present, medically uncertain. However, for this emergency TRO Motion, the Court will assume without deciding that it is possible for Petitioner to **re**-contract COVID-19.

[5] Respondents have submitted the Declaration of Christopher L. LaBier, which details the conditions at Butler as of June 18, 2020 (the "Instant LaBier Decl."). (Doc. 10-1). On the Court's review, the Instant LaBier Decl. is largely identical to a declaration Mr. LaBier submitted to Judge Sarah D. Morrison in *Prieto Refunjol v. Adducci*, No. 2:20-CV-2099, 2020 WL 2487119 (S.D. Ohio May 14, 2020) (the "*Prieto* LaBier Decl."). (*See* Doc. 10-4 (containing a copy of the *Prieto* LaBier Decl.)). In *Prieto*, Judge Morrison set forth a detailed summary of Mr. LaBier's representations, which this Court incorporates herein by reference. *Prieto*, 2020 WL 2487119, at *8–9. On the Court's review, and for the purposes of the instant Order, it appears that the only material difference between Butler's conditions on May 14, 2020 (when *Prieto* was issued) and Butler's conditions at present is that, on May 14, 2020, Butler had two confirmed COVID-19 cases, whereas Butler currently has no confirmed or suspected COVID-19 cases. (*Compare* Doc. 10-1 at 5, *with* Doc. 10-4 at 5).

**A. Likelihood of Success**[6]

The first factor is whether the moving party has shown a strong likelihood of success on the merits.  To establish a strong likelihood of success on the merits, a petitioner "is not required to prove [its] case in full."  *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).  However, a petitioner "must show more than a mere possibility of success."  *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997).  In his Habeas Petition, Petitioner sets forth one claim.  (Doc. 1 at 19–20).  Petitioner alleges that his continued detention amounts to unconstitutional punishment under the Fifth Amendment.  (*Id.*)

Under the Due Process Clause of the Fifth Amendment, the government cannot punish a detainee "prior to an adjudication of guilt."  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *J.H. v. Williamson Cty.*, 951 F.3d 709, 717 (6th Cir. 2020).  This same standard applies in the civil detention context.  *See Youngberg v. Romeo*, 457 U.S. 307, 315, 320–

---

[6] Respondents raise two threshold arguments in opposition to the TRO Motion.  Neither is well-taken.  First, Respondents argue that it is not proper for Petitioner to challenge the conditions of his confinement in a § 2241 petition.  (Doc. 10 at 8–11).  But the Sixth Circuit's recent analysis in *Wilson* does away with this argument.  2020 WL 3056217, at *5 (noting that where, as here, a petitioner alleges that the "unconstitutional conditions of [his] confinement can be remedied only by release, . . . § 2241 confer[s] upon the district court jurisdiction to consider the petition").  Second, Respondents argue that Petitioner cannot "demonstrate" an injury in fact, because Petitioner has already contracted and recovered from COVID-19.  (Doc. 10 at 7–8).  Respondents base their argument on the fact that, at present, it is medically uncertain whether a person can re-contract COVID-19.  (*Id.*)  But at the pleading stage, a party need only allege, rather than prove, the facts establishing his standing.  *See Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992) (stating that, to show an injury in fact, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . .").  Here, Petitioner has certainly alleged that he is at danger of contracting COVID-19, and this allegation meets Petitioner's burden at this early stage of the litigation.  (Doc. 1 at 1); *cf. Prieto*, 2020 WL 2487119, at *20 (concluding that petitioners with COVID-19 had standing to pursue Fifth Amendment claim).

21 (1982). A pretrial detainee can demonstrate that unconstitutional punishment exists "by showing that a . . . condition [of his confinement] is not rationally related to a legitimate government objective or is excessive in relation to that purpose."[7] *J.H.*, 951 F.3d at 717 (citing *Bell*, 441 U.S. at 538–39).

On the Court's review, there is no question that Respondents are detaining Petitioner pursuant a legitimate government objective. The government undoubtedly has a legitimate interest in detaining certain individuals prior to a formal adjudication of their case, where a court has found the detention necessary to ensure the safety of the public or the appearance of the individual for court proceedings. *See, e.g.*, *Bell*, 441 U.S. at 534 ("confinement of [certain pretrial detainees] pending trial is a legitimate means of furthering [a substantial government] interest"); *Prieto*, 2020 WL 2487119, at *20 (noting there is a legitimate interest in detention pending removal proceedings). Accordingly, the key question before the Court is whether Petitioner's continued detention poses a risk to his safety that outweighs (*i.e.*, "is excessive in relation to") Respondents' interest in detaining him. *See J.H.*, 951 F.3d at 717; *see also Prieto*, 2020 WL 2487119, at *21.

Petitioner submits that his release is appropriate, because the conditions at Butler place him at greater risk of contracting (or re-contracting) COVID-19 and because he suffers from an underlying medical condition, which makes him susceptible to serious

---

[7] A pretrial detainee can also demonstrate unconstitutional punishment "by showing 'an expressed intent to punish on the part of the detention facility officials . . . .'" *J.H.*, 951 F.3d at 717 (quoting *Bell*, 441 U.S. at 538–39). However, here, Petitioner has presented no evidence of such an expressed intent.

8

complications from the virus. (Doc. 1 at 1; Doc. 7 at 2). This Court readily acknowledges that COVID-19 poses a significant risk to the health and safety of every person globally. The Court further acknowledges that the risk of contracting COVID-19 is heightened in a prison setting, where precautions such as social distancing and adequate cleaning are difficult to accomplish. However, the possibility of contracting COVID-19, in and of itself, is insufficient to warrant the extraordinary relief of releasing lawfully detained individuals. *See Marqus v. Adducci*, No. 2:20-CV-11121, 2020 WL 2525943, at *9 (E.D. Mich. May 18, 2020) ("The court acknowledge[s] that the spread of COVID-19 may be acutely possible in the penological context, but the court cannot release every detainee at risk of catching COVID-19 because the court would be obligated to release every detainee." (quoting *United States v. Gabelman*, No. 2:20-CR-19, 2020 WL 1430378, at *1 (D. Nev. Mar. 23, 2020))); *Bystron v. Hoover*, No. 3:20-CV-602, 2020 WL 1984123, at *6 (M.D. Pa. Apr. 27, 2020) (same); *accord Sow v. Adducci*, No. 2:20-CV-2140, 2020 WL 3000425, at *4 (S.D. Ohio June 4, 2020), *report and recommendation adopted*, No. 2:20-CV-2140, 2020 WL 3415110 (S.D. Ohio June 22, 2020). And, at present, Petitioner has not demonstrated that he is susceptible to serious or life-threatening complications should he contract (or re-contract) COVID-19.

Rather, Petitioner readily acknowledges that he has made "no claim that [he] currently suffers from Hepatitis." (Doc. 11 at 4). Indeed, the information currently before the Court evidences that Petitioner suffered from **_acute_** Hepatitis B in 2014. However, _acute_ Hepatitis B is "a **short-term** infection" caused by the Hepatitis B virus, while _chronic_ Hepatitis B is "a lifelong infection" caused by the Hepatitis B virus. *See*

9

Centers for Disease Control and Prevention, *Hepatitis B General Information*, available at https://www.cdc.gov/hepatitis/ hbv/pdfs/hepbgeneralfactsheet.pdf (last accessed June 24, 2020) (emphasis added). And while "about 5% of adults" who contract acute Hepatitis B develop chronic infections, most adults who contract acute Hepatitis B "clear" the virus and cannot contract it again. *Id.*[8] Additionally, Petitioner has failed as of yet to provide any evidence that his prior bout of acute Hepatitis B has rendered him currently susceptible to increased COVID-19 complications. Indeed, the only evidence presently before the Court indicates that Petitioner has fully recovered from his 2014 infection, has experienced no complications since that time, and is otherwise in generally good health. (*See* PSR).

Moreover, Petitioner has failed to evidence that the circumstances in or procedures implemented at Butler place him at greater risk to develop serious or life-threatening complications. The undersigned's colleague, Judge Sarah D. Morrison, has recently analyzed the conditions at Butler, in the context of a Fifth Amendment claim. *See Prieto*, 2020 WL 2487119, at *8–9, 20–22. In a thorough Opinion and Order, Judge Morrison concluded that the conditions at Butler were likely to punish certain "high risk" detainees, who had presented sufficient evidence of preexisting conditions that rendered them particularly likely to experience COVID-19-related complications. *Id.* at *20–22. However, Judge Morrison did not reach the same conclusion with regard to detainees

---

[8] World Health Organization, *Hepatitis B*, available at https://www.who.int/news-room/fact-sheets/detail/hepatitis-b (last accessed June 24, 2020) ("[L]ess than 5% of otherwise healthy persons who are infected [with Hepatitis B] as adults will develop chronic infections . . . .").

10

who had not presented any evidence of such conditions. *Id.*; *accord Sow*, 2020 WL 3000425, at *3 (refusing to release a petitioner from ICE custody under the Fifth Amendment, even though the petitioner had contracted COVID-19, as the petitioner had failed to present evidence of [a] "pre-existing condition[] that place[d] him at high risk for complications from COVID-19").

Notably, the information presently before the Court indicates that the conditions at Butler have improved since the analysis in *Prieto*. (*Compare* Doc. 10-1 at 5, with Doc. 10-4 at 5). Indeed, when *Prieto* was issued, Butler had two confirmed COVID-19 cases, whereas Butler currently has no confirmed or suspected COVID-19 cases. (*Id.*) (Doc. 1 at 14). Thus, Petitioner has yet to present this Court with any evidence that the conditions at Butler are punitive.

In short, Petitioner has not submitted any evidence that he presently suffers from an underlying medical condition or is otherwise medically vulnerable to serious or life-threatening complications. Nor has Petitioner provided any evidence that the conditions in Butler render his continued detention punitive. Absent such evidence, under the precedent cited *supra*, Petitioner has failed to establish a strong likelihood of success on the merits of his Fifth Amendment claim. *See Prieto*, 2020 WL 2487119, at *20–22; *Sow*, 2020 WL 3000425, at *3; *cf. Albino-Martinez v. Adducci*, No. 2:20-CV-10893, 2020 WL 1872362, at *1 (E.D. Mich. Apr. 14, 2020) ("A TRO that requests an affirmative act, like the one Petitioners request here, is tantamount to a mandatory injunction [and] requires a higher—yet undefined—burden to issue than required of an

11

order merely preserving the status quo." (internal quotations marks and citations omitted)).[9]

Accordingly, the first factor weighs against Petitioner.

### B. Irreparable Harm

The second factor is whether the moving party will suffer irreparable harm if the injunction is not issued. To demonstrate irreparable harm, a petitioner must show that, unless injunctive relief is granted, he "will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006) (internal quotations and citation omitted).

As stated *supra*, at this stage of the litigation, Petitioner has failed to present evidence that he suffers from a preexisting condition that renders him particularly susceptible to COVID-19-related complications. Additionally, at this stage of the litigation, Petitioner has failed to present any evidence that there are any confirmed or suspected cases of COVID-19 at Butler. Under such circumstances, the Court cannot

---

[9] Respondents submit that the Court should analyze Petitioner's claim under the Eighth Amendment's deliberate indifference standard. (Doc. 10 at 12–15). Although Petitioner did not assert an Eighth Amendment claim, it bears noting that, at this early stage of the case, the Court would reach the same result under either the Fifth or Eighth Amendment standards. The Eighth Amendment's deliberate indifference analysis has both an objective and a subjective prong. *Wilson*, 2020 WL 3056217, at *7. Under "the objective prong, an inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. Under the subjective prong, an official must know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* (quotation marks and citations omitted). Here, while the risk of contracting COVID-19 may pose a substantial risk of serious harm, Petitioner has not evidenced, at this time, that any ICE or Butler officials had "know[ledge] of and disregard[ed] an <u>excessive</u> risk to [Petitioner's] health or safety." *See id.* (emphasis added); (*see* Doc. 10-1 at 5); *accord Sow*, 2020 WL 3000425, at *3 ("Petitioner has not presented any evidence to show that he is at higher risk[] for complications due to COVID-19. Because Petitioner has not demonstrated that he is at substantial risk of a serious future harm, [Petitioner's deliberate indifference claim] fails as a result.").

conclude that Petitioner will suffer irreparable harm if he is not immediately released. *Accord Marqus*, 2020 WL 2525943, at *9 ("In the absence of . . . health conditions [which place Petitioner at risk for COVID-19-related complications], the Court does not find that Petitioner can establish a likelihood of substantial and immediate irreparable injury.").

The second factor weighs against Petitioner.

### C. Harm to Others/Public Interest

Finally, where, as here, the government opposes the issuance of a TRO, the third factor, *i.e.*, whether the issuance of the injunction would cause substantial harm to others, and the fourth factor, *i.e.*, whether the public interest would be served by issuing the injunction, merge into one. *See Wilson*, 2020 WL 3056217, at *11 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

There is no question that there is a strong public interest in enforcing the laws of the United States. And, here, there is no question that Petitioner's removal proceedings are in progress, that Petitioner is presently in detention pursuant to a lawful removal order, and that Petitioner has a history of unlawful re-entry and committing offenses while in the United States. (Doc. 10-2 at 2–6; CR Doc. 62; *see also* PSR).

Thus, the public interest under the third and fourth factors weigh against granting the TRO Motion.

\*     \*     \*

Upon balancing the applicable factors, the Court concludes that Petitioner's TRO motion must be denied. While Petitioner's claim <u>may</u> have merit upon the submission of

13

additional evidence, Petitioner has failed to establish that extraordinary injunctive relief is appropriate at this time.

## IV. CONCLUSION

Based upon the foregoing, the TRO Motion (Doc. 7) is **DENIED**.[10]

**IT IS SO ORDERED.**

Date: 6/25/2020

Timothy S. Black
United States District Judge

---

[10] The TRO Motion (Doc. 7) was filed to correct an error in the exhibits attached the Petitioner's first TRO Motion filing (Doc. 5). Accordingly, the Court terminates as moot the pending motion at Doc. 5.